**STELCO HOLDING COMPANY, and Pikeville Coal Company, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**Nos. 95–81T, 97–168T.**

United States Court of Federal Claims.

Sept. 9, 1999.

---

Robert E. Glaser, Cleveland, Ohio, attorney of record for plaintiffs.

George L. Squires, Washington, D.C., with whom was Assistant Attorney General Loretta C. Argrett, for defendant.

## OPINION ON MOTION FOR RELIEF FROM JUDGMENT

REGINALD W. GIBSON, Senior Judge.

### INTRODUCTION

By an opinion and order filed September 29, 1998, this court entered judgment pursuant to RCFC 54(b) dismissing the complaint in case No. 97–168T with prejudice insofar as it relates, *inter alia,* to the corporation income tax refund claim of Stelco Holding Company and its consolidated subsidiaries (hereinafter Stelco or plaintiff) for the taxable year 1988. The basis for dismissal was lack of subject matter jurisdiction, on the ground that Stelco had failed to establish

that it had filed a timely administrative refund claim for taxable year 1988. *Stelco Holding Co. v. United States,* 42 Fed.Cl. 101, 103–04, 118 (1998). Familiarity with the court's opinion of September 29, 1998, is herein presumed. On November 23, 1998, Stelco filed a motion for partial relief from the September 29, 1998 judgment, pursuant to RCFC 60(b), asking the court to set aside the dismissal with prejudice as to its 1988 refund claim.[1] As grounds for relief, Stelco alleges that it did, in fact, file an administrative refund claim for its 1988 taxable year, and that its prior failure to produce said refund claim for the court's inspection was due to "mistake, inadvertence, ... or excusable neglect," within the meaning of RCFC 60(b)(1).[2] For the reasons set forth below, we hold that plaintiff has failed to demonstrate any mistake, inadvertence, or excusable neglect that would justify the relief it claims.

### BACKGROUND

The September 29, 1998 judgment dismissed Stelco's 1988 refund claim with prejudice on the basis of (i) Stelco's failure to produce a timely-filed administrative refund claim for that year; and (ii) Stelco's unequivocal judicial admission that "tax years 1987 and 1988 are *closed.*"[3] Plaintiff's Brief Re: Motion of The United States to Dismiss

---

1. Stelco had earlier filed, on October 13, 1998, a motion for reconsideration in part, pursuant to RCFC 59(a), asking the court to "correct" its dismissal of Stelco's 1992 refund claim from a dismissal with prejudice to a dismissal without prejudice. In an opinion filed on October 20, 1998, the court denied Stelco's motion for reconsideration. *Stelco Holding Co. v. United States,* 42 Fed.Cl. 156, 160 (1998). Familiarity with the court's October 20, 1998 opinion on reconsideration is likewise presumed herein.

2. Plaintiffs' Motion For Relief From Judgment Or Order Under RCFC 60(b) As To 1988 (Pl.Mtn.Relief), filed November 23, 1998, at 2. *See also* Plaintiffs' Brief In Support Of Motion For Relief From Judgment Or Order Under RCFC 60(b) As To 1988 (Pl.Brf.), filed November 23, 1998, at 3. RCFC 60(b) provides, in pertinent part, as follows:

    On motion and upon such terms as are *just,* the court may relieve a party or the party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusa-

ble neglect; ... or (6) any other reason justifying relief from the operation of the judgment. RCFC 60(b) (emphasis added). Stelco expressly disavows the applicability of RCFC 60(b)(6), "the residual clause of Rule 60(b) ... [that] requires a showing of 'extraordinary circumstances.'" *Information Systems and Networks Corp. v. United States,* 994 F.2d 792, 795 (Fed.Cir.1993) (quoting *Ackermann v. United States,* 340 U.S. 193, 202, 71 S.Ct. 209, 95 L.Ed. 207 (1950)). Pl. Brf. at 2. Instead, Stelco bases its claim for relief exclusively upon RCFC 60(b)(1), no doubt because "subsections (1) and (6) of Rule 60(b) 'are mutually exclusive,' ... and the required showing of extraordinary circumstances under subsection (6) does not apply to excusable neglect under subsection (1)." *Information Systems,* 994 F.2d at 795–96 (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. Partnership,* 507 U.S. 380, 393, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993)).

3. Although Stelco's 1987 refund claim was dismissed with prejudice on the same grounds, Stelco's RCFC 60(b)(1) motion is addressed solely to the dismissal of its 1988 refund claim.

Plaintiff's Claims for 1987 and 1988 (Pl. Br.1987–88), filed June 17, 1998, at 5 (emphasis added); *see also id.* at 2, 6 (additional judicial admissions to same effect). *See Stelco,* 42 Fed.Cl. at 103–04 & n. 4. By "closed," Stelco meant that it was barred, due to the expiration of the applicable statute of limitations, from filing an administrative refund claim for its taxable year 1988 with the IRS. *See* 26 U.S.C. § 6511(a) (providing that an administrative claim for refund must be filed within three years following the date on which the taxpayer files its original tax return for the year in question).[4] Further, by way of explaining its alleged nonfiling of an administrative refund claim, Stelco averred that the year 1988 was merely a loss year through which carryforwards, *i.e.,* net operating losses (NOLs), from previous years were expected to carry. *Stelco,* 42 Fed.Cl. at 104 n. 4. Dismissal with prejudice was obligatory, of course, given the foregoing, inasmuch as the taxpayer's failure to file a timely administrative claim for refund bars this court from exercising subject matter jurisdiction over the taxpayer's suit for refund. *Id.* (citing *United States v. Felt & Tarrant Mfg. Co.,* 283 U.S. 269, 272, 51 S.Ct. 376, 75 L.Ed. 1025 (1931)). Stelco now maintains that its prior judicial admission—that 1988 is a closed year for purposes of this litigation—was inaccurate.

In support of its motion for partial relief from this court's judgment, Stelco has submitted what appears to be a copy of an administrative refund claim (Form 1120X) for its taxable year 1988, executed by Stelco's authorized representative on September 9,

1992. The Government admits that the aforementioned Form 1120X was received by the Internal Revenue Service's Cincinnati, Ohio, Service Center on September 11, 1992. Defendant's Status Report, filed January 15, 1999. Thus, it is clear that Stelco did, in fact, file an administrative refund claim for its taxable year 1988.

As to the timeliness of that administrative refund claim, we note plaintiff's submission of a copy of the first page from its 1988 corporation income tax return (Form 1120), the authenticity of which is established by the sworn affidavit of Ms. Mary T. Di Battista, Manager–Taxation of Stelco, Inc., the Canadian parent company of Stelco Holding Company, plaintiff here.[5] Said 1988 tax return bears September 12, 1989, as the date on which it was executed by plaintiff's authorized representative. Pl. Brf. Exhibit B. Assuming, in the absence of evidence to the contrary, that Stelco's original 1988 tax return was filed *after* it was duly executed on September 12, 1989,[6] the three-year limitations period on the filing of an administrative refund claim for the taxable year 1988 expired not earlier than September 12, 1992. Therefore, given the Government's admission that the IRS received Stelco's 1988 administrative refund claim on September 11, 1992, and solely for purposes of considering Stelco's RCFC 60(b)(1) motion, the court shall assume, without deciding, that said administrative refund claim was timely filed.

Stelco contends that its prior failure to produce its 1988 administrative refund claim

---

4. Section references herein are to the Internal Revenue Code of 1986, Title 26, U.S.Code, in effect when Stelco could have filed administrative claims for refund with the IRS and when it did file the complaint in this court.

5. Ms. Di Battista avers that in her capacity as Manager–Taxation, she is responsible for "oversee[ing] the preparation and filing of United States tax returns for subsidiaries of Stelco, Inc." Such responsibilities undoubtedly encompass the custody of previously filed tax returns.

6. We duly note Ms. Di Battista's averment that "[t]he 1988 corporate tax return for Stelco Holding Company was filed on or about September 15, 1989, having been forwarded on September 12, 1989, as evidenced by 'Exhibit B' attached hereto." Exhibit B to Ms. Di Battista's affidavit

consists of a copy of the first page of Stelco's 1988 tax return, *supra,* accompanied by a copy of an unsigned letter dated September 12, 1989, that purports to evidence the transmittal of Stelco's 1988 tax return to the IRS. However, her affidavit also states that she did not assume her responsibilities as Manager–Taxation *until 1995.* Absent more, we are constrained to conclude that Ms. Di Battista lacks personal knowledge of the manner and timing of the *filing* of Stelco's 1988 tax return. The copy of the unsigned transmittal letter dated September 12, 1989, is simply uncorroborated hearsay. Thus, while it is entirely logical to assume that Stelco's 1988 tax return was filed on or after September 12, 1989, the date of its execution, we cannot say that said filing date has been definitively proven.

was attributable to its legal counsel's mistaken belief that 1988 was a "closed year," as to which the filing of an administrative refund claim was barred due to the expiration of the statute of limitations under § 6511(a). Regarding most of the taxable years for which refund claims were pleaded in Stelco's complaint, *i.e.,* the years 1981, 1982, 1983, 1984, 1985, 1986, 1989, 1990, and 1991, Stelco and the Government had entered into a series of written agreements (Forms 872) extending the statute of limitations on the filing of administrative refund claims for such years through December 31, 1996. *Stelco,* 42 Fed. Cl. at 104 n. 4, 106–07 & n. 10.[7] Taxable year 1988 had been included in Forms 872 at one time, according to Stelco, but its former in-house tax manager later decided to remove 1988 from these ongoing extensions of the statute of limitations. Pl. Brf. at 1. As to the circumstances in which the foregoing decision was made, and the consequences thereof, Stelco further avers:

> This decision to remove 1988 from [the] ongoing Forms 872 was made during discussions between the IRS and the Plaintiff leading up to the filing by the IRS with the Joint Committee for years ending with 1991. Counsel for Plaintiffs did not participate in these discussions. Thus counsel is unaware of the circumstances under which the decision was made.

Pl. Brf. at 1–2.[8] Notwithstanding his lack of actual knowledge of the content of the discussions between Stelco and the IRS prior to the Joint Committee filing, "[c]ounsel for the Plaintiffs *assumed* that 1988 had been allowed to close for some reason unique to the discussions as it was removed from the Form 872." *Id.* at 2 (emphasis added). It was this assumption, apparently, that led counsel for plaintiff to inform the court that Stelco "ha[s] recognized from the beginning that *years 1987 and 1988 are not open* and will only be relevant in passing carryovers through them." Pl. Br.1987–88 at 2 (emphasis added).

The circumstances in which counsel for plaintiff formed his misconception regarding the status of the taxable year 1988 are somewhat further illuminated by Ms. Di Battista's affidavit, in which she states as follows:

> 1. In my position as Man[a]ger–Taxation for Stelco, Inc., I oversee the preparation and filing of United States tax returns for subsidiaries of Stelco, Inc.;
>
> 2. I assumed my responsibilities in 1995;
>
> 3. I am not a national of the United States, do not live in the United States and am not trained in the United States tax laws;
>
> 4. Until I read the judgment of this Court in the pending litigation I believed that my predecessor had allowed tax year 1988 to close for refund purposes;
>
> 5. I was mislead [sic] because Forms 872's in my current file showed that 1988 was not included in extensions of the statute of limitations filed by my predecessor;
>
> 6. On October 30, 1998, in attempting to reconstruct prior year records to determine the consequences of the decision of the court on September 29, 1998, I discovered the timely filed claim for refund attached hereto as "Exhibit A" [*i.e.,* Stelco's 1988 Form 1120X, *supra* ];
>
> 7. The 1988 corporate tax return for Stelco Holding Company was filed on or about September 15, 1989, having been forwarded on September 12, 1989 as evidenced by "Exhibit B" attached hereto;
>
> 8. Based upon my current records, I had no way of knowing of the existence of the claim for 1988 which I discovered on October 30, 1998;
>
> 9. I have acted under the mistaken belief that 1988 was closed for statute of limitations purposes but have now been informed that 1988 is closed generally but remains open to the extent of the timely filed claim for refund[.]

Di Battista Affidavit, dated November 17, 1998. Although the precise nature and extent of the communications, if any, between counsel for plaintiff and Ms. Di Battista are not a matter of record, her affidavit plainly is

---

7. Such Forms 872 allowed Stelco to file its administrative refund claims for the aforesaid nine tax years in timely fashion. *Id.* at 104 n. 4, 107.

8. *See Stelco,* 42 Fed.Cl. at 110 (noting such Joint Committee proceedings).

intended to suggest that counsel, in forming the mistaken belief that 1988 was a closed year, unwittingly relied upon Ms. Di Battista's imperfect knowledge. Thus, in seeking to establish that the foregoing circumstances satisfy the "mistake, inadvertence, ... or excusable neglect" standard for relief under RCFC 60(b)(1), Stelco argues:

> The failure to know of the pending timely filed claim is clearly mistake and inadvertence. It is also excusable neglect, if neglect existed. The foreign representative of the taxpayer, Ms. DiBattista [sic], was not involved in the processing of tax years prior to 1995. The current records in her files showed that 1988 was not included in the extensions agreed upon pursuant to Form 872. She was aware that 1988 was removed from [the] ongoing Form 872s filed with the Commissioner by her predecessor. She was under the mistaken belief that 1988 was closed.... Here there (i) is no delay caused by the mistake, inadvertence or any neglect (assuming that there was negligence); (ii) the government is not prejudiced except to the extent that the tax law would be applied objectively and correctly[,] based upon the merits[;] and (iii) the moving party did not act in bad faith....Ms. DiBattista [sic] is a foreigner and not familiar with the detailed rules governing claims and jurisdiction in this court.

Pl. Brf. at 3–4.

In response to the foregoing, the Government declines to address whether the conduct of Stelco's representatives falls within the meaning of "mistake, inadvertence, ... or excusable neglect" under RCFC 60(b)(1). Rather, the Government argues:

> Whether Stelco filed a timely claim for refund for 1988 does not appear to be dispositive of whether this Court should grant plaintiffs the relief they seek because their claim for that year should be dismissed even if they did file a timely claim. Plaintiffs have not withdrawn their admission that there is no potential for any refund of taxes for 1988. ([Pl. Br.1987–88], at 2). As plaintiffs correctly conceded

in their memorandum dated May 29, 1998, at 2, a claim for refund of tax is a jurisdictional prerequisite for bringing a tax refund action. *If the Government is not holding any tax paid for the taxable period* (as plaintiffs admit to be the case with respect to their 1988 taxable year), then a tax refund claim for that taxable period necessarily must fail to state a claim upon which relief could be granted. Accordingly, even if plaintiffs did file a timely claim for refund for 1988, the Court was correct in dismissing their claims for 1988.

Defendant's Reply To Plaintiffs' Motion For Relief Pursuant To RCFC 60(b) (Def.Brf.), filed December 7, 1998, at 2–3 (emphasis added). The Government further contends that Stelco's entitlement to relief under RCFC 60(b) hinges on whether Stelco has shown that it has a meritorious tax refund claim for its taxable year 1988. By failing to state a claim upon which relief could be granted, the Government reasons, Stelco necessarily has failed to show that it has a meritorious claim.

In reply, Stelco contends that there *are*, in fact, taxes refundable with respect to its taxable year 1988 and seeks to withdraw, as erroneously made, its prior statement that 1988 was merely a loss year through which NOLs from previous years were expected to carry without generating a refund of tax.[9] However, as the ensuing discussion shall demonstrate, even if the court accepts the premise that Stelco's prior statement was inaccurate, we are nonetheless constrained to conclude Stelco has failed to prove the existence of any mistake, inadvertence, or excusable neglect that would warrant relief under RCFC 60(b)(1).

### DISCUSSION

In determining whether the movant under RCFC 60(b)(1) has made out a *prima facie* case of mistake, inadvertence, or excusable neglect entitling the movant to relief from the judgment complained of, three conjunctive factors must be considered and established: (1) the movant must have a meritorious claim or defense; (2) the nonmovant

---

9. Plaintiffs' Reply Brief In Support Of Motion For Relief From Judgment Or Order Under

RCFC 60(b) As To 1988 (Pl.Reply), filed November 23, 1998, at 2.

must not be prejudiced by the granting of relief; *and* (3) the movant's dilemma was not caused by its own culpable conduct. *Information Systems*, 994 F.2d at 795.[10] No single factor is dispositive. Rather, the court must apply a balancing approach that weighs each factor in light of all the pertinent facts and circumstances. *Id.* at 795–96. Each of the foregoing three factors shall be addressed in turn.

### 1. *Existence Of A Meritorious Claim*

■ The court's inquiry as to whether the movant, under Rule 60(b)(1), has stated a meritorious claim is intended to make certain that by "vacating the judgment [it] will not be an empty exercise" on a determination of the merits. *Local 59 v. Superline Transp. Co.*, 953 F.2d 17, 20 (1st Cir.1992). *See* 12 James Wm. Moore et al., *Moore's Federal Practice* § 60.24[1] (3d ed.1998) (collecting cases to same effect).[11] Adequate justification for relief under Rule 60(b)(1) does not, however, require a finding that Stelco's success on the merits of its case is a virtual certainty. Rather, Stelco's claim shall be deemed meritorious if it merely states a legally tenable cause of action, *i.e.*, alleges a set of operative facts which, if proven at trial, would establish Stelco's entitlement to recover taxes overpaid for its 1988 taxable year.

*See Local 59*, 953 F.2d at 21; *Information Systems and Networks Corp. v. United States*, 26 Cl.Ct. 314, 317 (1992) (citing *INVST Fin. Group, Inc. v. Chem–Nuclear Sys., Inc.*, 815 F.2d 391, 398–99 (6th Cir. 1987); *United Coin Meter Co. v. Seaboard Coastline R.R.*, 705 F.2d 839, 845 (6th Cir. 1983); *Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372, 374 (D.C.Cir. 1980)), *rev'd on other grounds*, 994 F.2d at 797.

■ At the outset, in applying the foregoing standard to the case at bar, we must weigh the effect of Stelco's prior statement that 1988 was a loss year through which NOLs are expected to carry through without generating any refund of tax. Defendant correctly points out that if the aforesaid statement is viewed as conclusive proof, *i.e.*, a judicial admission [12] that "the Government is not holding any tax paid" with respect to the taxable year 1988, Def. Brf. at 3, then Stelco has failed to state a meritorious claim. *See Stelco*, 42 Fed.Cl. at 103 (dismissing with prejudice refund claims for the years 1982 and 1983, for lack of subject matter jurisdiction, on the basis of plaintiff's judicial admission that all taxes previously paid for those years had already been refunded). We disagree, however, with the Government's hos-

---

**10.** The Federal Circuit defined the above mentioned three-factor test in the context of alleged "excusable neglect" under RCFC 60(b)(1). *Id.* at 795. *Information Systems* does not address whether "mistake" or "inadvertence," grounds for relief that Stelco raises here at bar, in addition to excusable neglect, are subject to the same three-factor test or to another mode of analysis. However, as explicated herein, we think that Stelco's allegations of mistake and inadvertence are, on this record, inescapably subsumed within its allegation of excusable neglect.

**11.** Our references hereafter to "Rule" 60(b)(1) reflect the Federal Circuit's acknowledgment that RCFC 60(b)(1) "is a virtual duplicate of Federal Rule of Civil Procedure 60(b)." *Information Systems*, 994 F.2d at 794 n. 3. Thus, in laying down the three-factor test that governs RCFC 60(b)(1) motions, the Federal Circuit observed that "[w]hile we have no considered binding case law precedent [sic] concerning criteria for interpretation of excusable neglect under Rule 60(b)(1), we are not unmindful of the actions of our sister circuits that have thoroughly considered this issue." *Id.* at 794–95. The three-factor test announced in *Information Systems* conforms to the approach taken by the

majority of the other federal courts of appeal. *Id.* at 795–96 (surveying case law in other circuits and adopting majority approach). However, the Federal Circuit had no occasion to explicate the "meritorious claim or defense" and "lack of prejudice" elements of its three-factor test, inasmuch as those issues were not presented in the appeal. *Id.* at 797. Accordingly, in applying those two standards to the case at bar, we follow the approach delineated by the Federal Circuit in *Information Systems* and treat precedents decided by the other federal courts of appeal and the federal district courts as instructive, though not binding.

**12.** "A judicial admission is a 'formal act, done in the course of judicial proceedings, which waives or dispenses with the production of evidence, by conceding for purposes of litigation that the proposition of fact alleged by the opponent is true.' " *International Paper Co. v. United States*, 39 Fed.Cl. 478, 482 (1997) (emphasis in original omitted) (quoting *Hofer v. Bituminous Casualty Corp.*, 260 Iowa 81, 148 N.W.2d 485, 486 (1967)).

pitable interpretation of Stelco's statements concerning the availability of refundable taxes for its 1988 taxable year. At no time in these proceedings has Stelco admitted, let alone *judicially* admitted, as defendant would have it, that "the Government is not holding any tax paid" for 1988. On the contrary, Stelco's precise statements concerning its taxable year 1988, numbered for ease of reference, read as follows:

1. Tax years 1987 and 1988 were excluded from the Forms 872 [extending the statute of limitations on Stelco's refund claims] during the many negotiations between the taxpayers and the Internal Revenue Service for various reasons. However, both of those years ultimately end up as loss years so the [NOL] carryforward from previous years will simply carry through to subsequent years.[13]

2. In Counts 2 through 13 of plaintiff's complaint specific demand for refund of taxes for each and every year from 1984 through 1995 is· made (although 1987 and 1988 *do not have taxes paid which are refundable as the result of* [NOL] *carryovers* ).[14]

3. A claim for 1987 and 1988 was set forth [in Stelco's complaint] but only because [NOL] carryovers from other years are anticipated to carry through those years . . . .Plaintiffs have recognized from the beginning that years 1987 and 1988 are *not open* and will only be relevant in passing [NOL] carryovers through them . . . .Years 1987 and 1988 are not included [among the years in which NOL carryforwards allegedly give rise to tax refunds].[15]

4. Plaintiffs recognize that tax years 1987 and 1988 are *closed.*[16]

5. In computing the [NOL] carryovers plaintiffs recognize that tax years 1987

and 1988 will be part of the computation but that those years cannot change as a result of the computation. Revenue Agent Detweiler states in her February 17, 1995 report transmittal [denying Stelco's claimed entitlement to enlarged NOL carryovers originating in the years 1981 through 1983], "[r]egardless of the results of the denied claim issues there would be no tax changes for the years included in this report [*i.e.,* the years 1981–1991, inclusive]." That statement may or may not be true of all of the years but plaintiffs *believe* that it is true for 1987 and 1988.[17]

6. Plaintiffs have *believed* that 1987 and 1988 *do not have taxes paid which are refundable as the result of* [NOL] *carryovers.* However, *if they do,* the result would simply be a reduction of the [NOL] carryover for any taxes refundable in those years.[18]

Fairly construed, the foregoing statements disclose only one definite, *unequivocal* judicial admission—that 1988 is a closed year. We have no doubt that Stelco did, in fact, judicially admit that 1988 is a closed year, for Stelco's prior written statements to this effect, Statements 3 and 4, *supra,* were undeniably "the sort of 'deliberate, clear and unequivocal' formal acts which constitute judicial admissions." *International Paper Co.,* 39 Fed.Cl. at 482 (quoting *Anderson Bros. Corp. v. O'Meara,* 306 F.2d 672, 676 (5th Cir.1962)).

Conversely, Stelco's prior statements to the effect that 1988 was a loss year, through which NOLs would carry without generating a refund of tax, were couched in more qualified terms. For example, in Statements 5 and 6, *supra,* Stelco averred that it merely "believed" this to be the case. Moreover,

---

13. Plaintiff's Memorandum To Show Cause (Pl. MSC), filed May 29, 1998, at 5. As we have explained at some length elsewhere, *Stelco,* 42 Fed.Cl. at 105–06, 111–12, the substantive basis of this tax refund suit (case No. 97–168T) is Stelco's alleged entitlement to enlarged NOLs that originate in each of the taxable years 1981, 1982, and 1983, and carry over to, or through, each of the taxable years 1984–1995, inclusive.

14. *Id.* at 6 (emphasis added).

15. Pl. Br.1987–88 at 2 (emphasis added).

16. *Id.* at 5 (emphasis added).

17. *Id.* at 6 (emphasis added).

18. Pl. Br.1987–88 at 7 (emphasis added).

Stelco consistently referred to 1988 as a year having no "taxes paid which are refundable as the result of [NOL] *carryovers.*" Statement 2, *supra* (emphasis added). *See also* Statements 1, 3, 5, 6, *supra* (references to NOL carryovers merely passing through the 1988 year). Stelco even added a caveat to address the possibility that the NOL carryovers in question might give rise to refundable taxes for 1988. Statement 6, *supra.*

In short, Stelco's statements regarding the potential refundability of 1988 taxes were limited to the context of tax refunds arising from NOL carryovers. Stelco has *never* characterized 1988 as a year having *no* refundable taxes under *any* circumstances. Consistent therewith, Stelco's petition includes an allegation that it overpaid income taxes for the taxable year 1988 in the sum of $563,281. Complaint, filed March 17, 1997 (Compl.), at 16, ¶ 74. We note, further, that notwithstanding its eleventh-hour appearance in these proceedings, Stelco's 1988 administrative refund claim (Form 1120X), *supra,* sought a refund in the amount of $577,566. Pl. Brf. Ex. A, at 2. Thus, defendant's assertion that Stelco has judicially admitted that "the Government is not holding any tax paid" for 1988, Def. Brf. at 3, is unfounded. On the contrary, it is clear beyond cavil that Stelco has alleged throughout these proceedings that the Government does, in fact, continue to hold taxes that Stelco paid with respect to the taxable year 1988.[19]

■■■ Having thus disposed of the Government's position, the court now considers whether Stelco's prior judicial admission that 1988 is a closed year bars a finding that Stelco has pleaded a meritorious refund claim for that year. A judicial admission is, of course, conclusively binding upon the party asserting it. *International Paper,* 39 Fed.

Cl. at 482 (citing, *inter alia, Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 122 (2d Cir.1990); *American Title Ins. Co. v. Lacelaw Corp.,* 861 F.2d 224, 226 (9th Cir. 1988)). Consequently, Stelco's judicial admission that 1988 is a closed year, coupled with its failure to timely produce an administrative refund claim for that year prior to this court's opinion on the motions, is what compelled the dismissal with prejudice of Stelco's 1988 refund claim for lack of subject matter jurisdiction.[20] *Stelco,* 42 Fed.Cl. at 103–04 & n. 4. Although conclusively binding upon its proponent, a judicial admission is not necessarily binding upon the *court. International Paper,* 39 Fed.Cl. at 482–83. This self-evident principle reflects the venerable tenet that litigants may not stipulate the court into error. *Id.* at 481 (citing *Kaminer Constr. Corp. v. United States,* 203 Ct.Cl. 182, 197, 488 F.2d 980, 988 (1973)). Error that cannot be brought about by the joint stipulation of the parties also cannot be accomplished by a single party's judicial admission. Thus, it is clear that prior to entry of final judgment, the court has a duty to reject a judicial admission that is demonstrably false. *International Paper,* 39 Fed.Cl. at 483 (citing *Dillon, Read & Co., Inc. v. United States,* 875 F.2d 293, 300 (Fed.Cir.1989)). That Stelco's judicial admission was demonstrably false is incontrovertibly evidenced by the Government's own eleventh-hour admission, in a status report filed on July 26, 1999—more than 13 months after defendant filed its Rule 12(b)(1) motion to dismiss Stelco's 1988 refund claim for lack of subject matter jurisdiction, and almost 10 months after the court granted said motion and dismissed Stelco's 1988 refund claim with prejudice—that IRS records do, in fact, show that Stelco paid 1988 income taxes, not heretofore

**19.** That Stelco allegedly incurred a loss for the year 1988, yet paid income tax for such year, is unremarkable, because corporations that have no regular taxable income not infrequently must pay the alternative minimum tax (AMT) imposed by § 55 and the environmental tax imposed by § 59A. *See, e.g., CSX Corp. v. United States,* 124 F.3d 643, 644 (4th Cir.1997); *Doyon, Limited v. United States,* 37 Fed.Cl. 10, 19 (1996), 42 Fed. Cl. 175, 179–80 (1998). Indeed, the $577,566 refund claim asserted in Stelco's 1988 Form

1120X is comprised entirely of AMT and environmental tax. Pl. Brf. Ex. A, at 4.

**20.** If, however, Stelco had produced its timely-filed 1988 administrative refund claim before the entry of final judgment dismissing its 1988 refund claim with prejudice, that would have negated Stelco's judicial admission that 1988 is a closed year, at least in so far as the grounds for recovery alleged in the administrative refund claim are concerned.

refunded, in the sum of $563,821.[21]

After the entry of final judgment, however, the court's duty to reject a demonstrably false judicial admission, subsumed within the judgment, is more limited in scope, due to the well-recognized public interest in the finality of judgments. Therefore, Stelco's belated production of its 1988 administrative refund claim will not hospitably negate its previous judicial admission that 1988 is a closed year, unless Stelco's prior nonproduction of such document was caused by "mistake, inadvertence, . . . or excusable neglect" within the meaning of Rule 60(b)(1). On the other hand, given the procedural posture of this case, to summarily reaffirm the conclusive force of Stelco's prior judicial admission would simply beg the question, inasmuch as relief from the consequences of that judicial admission is precisely what Stelco seeks in its Rule 60(b)(1) motion. Rather than placing undue weight upon Stelco's prior judicial admission, the court must adhere to the three-factor test applicable to Rule 60(b)(1) motions. *Information Systems*, 994 F.2d at 795. Under that three-factor test, the immediate question is whether Stelco has now stated a meritorious claim for taxable year 1988. Accordingly, *solely* for the sake of determining whether Stelco has *otherwise* stated a meritorious claim, the court shall disregard Stelco's prior judicial admission that 1988 is a closed year.

■ Our determination of whether Stelco has stated a meritorious refund claim for its 1988 taxable year is guided by the fundamental doctrine of variance, under which it is axiomatic that "a taxpayer cannot present one ground for refund in its [administrative] claim and a different ground in its petition." *Union Pacific R.R. Co. v. United States*, 182 Ct.Cl. 103, 109, 389 F.2d 437, 442 (1968). The underlying rationale of the variance doctrine is that a taxpayer cannot maintain a tax

refund suit without providing prior "adequate notice to the Commissioner of the nature of the claim, and its underlying facts, so that a thorough administrative investigation and determination can be made." *Burlington Northern Inc. v. United States*, 231 Ct.Cl. 222, 225, 684 F.2d 866, 868 (1982). Simply put, it is beyond this court's jurisdiction to adjudicate any 1988 claim for refund pleaded on grounds not expressly or impliedly stated in Stelco's 1988 administrative refund claim. *Id. See, e.g., Stelco*, 42 Fed.Cl. at 159–60 (on reconsideration, sustaining dismissal with prejudice of plaintiff's 1992 refund claim on grounds of variance).

With the foregoing in mind, we turn to Stelco's 1988 administrative claim for refund (Form 1120X), which states, in relevant part:

> The taxpayer believes that in the *1978 to 1982* taxation years, there should be a greater downward adjustment in the price charged for its Chisholm mine coal sold to its Canadian parent company, Stelco Inc.[,] than what has already been allowed as an adjustment by the IRS. This issue is known as the *"Coal Price Issue"* and is more fully described in Item 2 of the Schedule to Form 870–AD and Page 7 of the Protest for Stelco Holding Company.

> \* \* \* \* \*

> This amended return reflects adjustments flowing from the audit of Stelco's tax years *1971 through 1983*. This amended return is based on Stelco's [e]stimates to date of adjustments that will arise as a result of that audit. Additional adjustments might be necessary once all issues on audit are finalized.

Pl. Brf. Ex. A, at 3–4 (emphasis added and emphasis in original omitted).[22] Stelco's petition in this court, relative to case No. 97–168T, sets forth extensive allegations concerning the above referenced "Coal Price

---

21. Further, by a filing dated September 1, 1999, the Government conceded that this court has subject matter jurisdiction over Stelco's 1988 refund claim, and formally withdrew its opposition to Stelco's Rule 60(b)(1) motion. However, irrespective of the Government's belated admissions, we had already determined on independent grounds, as delineated herein, *supra*, that we have subject matter jurisdiction over Stelco's

1988 refund claim. As a consequence, the Government's concessions alter the analysis and conclusion set forth herein not one iota.

22. The other grounds of recovery stated in Stelco's 1988 Form 1120X are not pleaded in the petition with respect to the year 1988 and, therefore, we have no occasion to consider them.

Issue" insofar as it relates to the taxable years 1981, 1982, and 1983.[23] Compl. at 8–12, ¶¶ 26–48. Moreover, Stelco avers that, should it prevail on the Coal Price Issue for the years 1981–1983, taxes will become refundable in one or more years subsequent to 1983—including, perhaps, 1988—as a result of "carryovers" from the years 1981–1983. Compl. at 14, ¶ 63. As further illuminated by Stelco's numerous post-petition filings with the court, such "carryovers" are NOLs originating in the years 1981–1983. Thus, Stelco's basic theory of recovery, in essence, is that a decision in its favor on the Coal Price Issue will enlarge its 1981–1983 NOLs, with the result that such enlarged NOLs will carry over and cause taxes to become refundable in one or more subsequent years. *Stelco,* 42 Fed.Cl. at 105.

One might detect a seeming variance between the petition's averments relating to the Coal Price Issue and NOL carryovers, as supplemented, and the allegations in Stelco's 1988 administrative refund claim (Form 1120X), *supra,* which make no express reference to the Coal Price Issue in connection with the year 1983, nor to NOL carryovers as a basis for the recovery of 1988 taxes. However, Stelco's 1988 Form 1120X quite plainly states that it "reflects adjustments flowing from the audit of Stelco's tax years *1971 through 1983.*" Pl. Brf. Ex. A, at 4 (emphasis added). From the foregoing, it is reasonable to infer that the Commissioner was put on constructive notice that: (i) the Coal Price Issue, expressly alleged in relation to the years 1978–1982, might impliedly relate to 1983 as well; and (ii) that Stelco based its 1988 refund claim, in part, upon

NOL carryovers, *i.e.,* "adjustments flowing from ... 1983." *Id.* Even if there were any doubt on that score, this court has previously held that the Commissioner, upon later conducting an audit of the years 1981, 1982, *and 1983,* obtained *actual* knowledge that if Stelco prevailed on the Coal Price Issue, enlarged NOLs originating in *all three* of the years 1981–1983 would carry forward into subsequent years—including, specifically, 1988. *Stelco,* 42 Fed.Cl. at 111–12. That prior holding conclusively disposes of any apparent variance, relative to the Coal Price Issue and NOL carryovers from the years 1981–1983 to the year 1988, between Stelco's 1988 administrative refund claim and its petition.

Turning to the merits of Stelco's 1988 refund claim, relative to NOL carryovers from the years 1981–1983, we find that such refund claim, as pleaded in the complaint and thereafter supplemented, has sufficient merit to satisfy the first element of the three-factor test required under Rule 60(b)(1). This is so because there is a reasonable likelihood that the putative operative facts of such claim would, *if proven at trial,* establish Stelco's entitlement to recover taxes overpaid for its 1988 taxable year. *See Local 59,* 953 F.2d at 21; *Information Systems,* 26 Cl.Ct. at 317 (citations omitted), *rev'd on other grounds,* 994 F.2d at 797. Specifically, Stelco's consolidated corporation income tax return (Form 1120) for the taxable year 1988, as originally filed, reported a loss in the sum of $5,864,857. Pl. Brf. Ex. B, at 3.[24] At first blush, this might lead one to believe that no income tax would be due for such year and, therefore,

---

**23.** To the extent the Coal Price Issue relates to the taxable years 1978–1980, it is pleaded in the petition in case No. 95–81T, consolidated herewith. *See Pikeville Coal Co. v. United States,* 37 Fed.Cl. 304, 306–08 (1997). The judgment entered on September 29, 1998 was addressed exclusively to case No. 97–168T, and decided no issues relating to case No. 95–81T. *Stelco,* 42 Fed.Cl. at 102 n. 1. In deciding Stelco's Rule 60(b)(1) motion for partial relief from the aforesaid judgment, this opinion is likewise concerned solely with case No. 97–168T.

**24.** *See also* Pl. MSC Ex. B, at 23 (Revenue Agent Detweiler's "Spread Sheet Analysis" of Stelco's NOL carryforward situation for the taxable years 1981–1991, confirming the amounts reported in

Stelco's original 1988 tax return and its 1988 administrative claim for refund). Moreover, the court is mindful that ordinarily, under Rule 60(b)(1), "[t]he movant's factual allegations will be accepted as true." *Information Systems,* 26 Cl.Ct. at 316–17 (citing *Cassidy v. Tenorio,* 856 F.2d 1412, 1415 (9th Cir.1988); *Falk v. Allen,* 739 F.2d 461, 464 (9th Cir.1984); *In re Stone,* 588 F.2d 1316, 1319 (10th Cir.1978)), *rev'd on other grounds,* 994 F.2d at 795–97. Thus, for purposes of deciding Stelco's Rule 60(b)(1) motion, we accept as true the matters set forth in its original 1988 tax return, its 1988 administrative refund claim, and its other pertinent submissions, inasmuch as the Government has presented no evidence to the contrary.

that NOLs would merely carry through such year without giving rise to any refund of tax.[25] Yet, Stelco's 1988 tax return reports a tax liability in the sum of $577,566. *Id.* This seemingly incongruous state of affairs arises from the tax law's requirement that corporations must pay the greater of the regular income tax imposed by § 11 or the alternative minimum tax (AMT) imposed by § 55. *See Doyon,* 42 Fed.Cl. at 180. Thus, Stelco's 1988 administrative refund claim (Form 1120X) discloses that Stelco's 1988 tax liability consists almost entirely of AMT.[26] Pl. Brf. Ex. A, at 4. AMT is computed on the basis of alternative minimum taxable income (AMTI), which is the taxpayer's regular taxable income, adjusted pursuant to §§ 56 and 58, and increased by the items of tax preference listed in § 57. § 55(b)(2). *See Doyon,* 42 Fed.Cl. at 180.

What is more, the Code expressly provides that NOLs originating in years beginning before January 1, 1987—such as Stelco's taxable years 1981–1983—may be carried forward and deducted as AMT NOLs, thereby reducing AMTI, in taxable years beginning after December 31, 1986, *i.e.,* Stelco's 1988 taxable year. § 56(d)(2)(B). From Stelco's 1988 tax return, as originally filed, it is plausible to infer that Stelco probably claimed no AMT NOL deduction, inasmuch as the first page of said tax return claims no deduction for NOL carryovers, pursuant to § 172(a), for purposes of the regular corporation income tax. Pl. Brf. Ex. B, at 3. Consequently, assuming that Stelco were to prevail on the merits of the Coal Price Issue, with the result that its NOLs originating in the years 1981–1983 would be enlarged, there is a reasonable likelihood that such enlarged NOLs

would carry over and offset a substantial portion of Stelco's AMTI for its taxable year 1988. It is readily apparent that such a reduction of AMTI would tend to reduce Stelco's AMT liability for such taxable year.[27]

On the merits, of course, Stelco would have the burden of presenting additional evidence concerning the specifics of its 1988 AMT computation, so as to establish that such enlarged NOL carryovers would, *in fact,* cause a reduction of its AMT liability. Notwithstanding the foregoing, on the more limited record presently before the court, and solely for purposes of deciding Stelco's pending Rule 60(b)(1) motion, we hold that Stelco satisfies the first of the three conjunctive elements of Rule 60(b)(1) by stating a sufficiently meritorious claim.

### 2. *Prejudice To Defendant*

The second element of said three-factor test under Rule 60(b)(1) addresses whether the nonmoving party will be prejudiced if relief is granted. *Information Systems,* 994 F.2d at 795. To be sure, defendant has an interest in the finality of the judgment entered on September 29, 1998. Yet, that interest cannot be meaningfully weighed in the abstract, for the same may be said about any prevailing litigant. On the contrary, we must realistically consider whether granting Stelco relief from said judgment would present any concrete threat of injury to the Government.

Prejudice, for purposes of Rule 60(b)(1), is commonly said to result from "the possibility of loss of evidence or other difficulties in obtaining discovery." *Information Systems,* 26 Cl.Ct. at 317 (citing *INVST Fin. Group,* 815 F.2d at 398, 388–400; *Davis v. Musler,*

---

**25.** Indeed, Stelco has made numerous prior statements, *supra,* to the effect that 1988 was a loss year on which NOL carryovers would have no effect. Nevertheless, we have already concluded that in one such case, Stelco qualified its statement so as to leave open the possibility that NOL carryovers might give rise to refundable taxes for 1988.

**26.** Of the $577,566 tax liability reported in Stelco's original 1988 tax return, $572,121 is AMT and $5,445 is the environmental tax imposed by § 59A. As in effect for the taxable year 1988, the environmental tax was payable in addition to any income tax (including the AMT), at a rate equal

to 0.12% of AMTI, after certain modifications, to the extent that AMTI so modified exceeded the sum of $2 million. § 59A(a). *See Doyon,* 42 Fed.Cl. at 180 n. 13.

**27.** A substantial portion, but not all, of Stelco's AMTI could be offset because, as a matter of law, the AMT NOL deduction is limited to 90% of AMTI, determined without regard to the AMT NOL deduction. § 56(d)(1)(A). Moreover, such AMT NOL carryovers would have no effect upon Stelco's environmental tax liability under § 59A, because the environmental tax is based upon AMTI without any reduction for the AMT NOL deduction. § 59A(b)(1).

713 F.2d 907, 916 (2d Cir.1983)), *rev'd on other grounds,* 994 F.2d at 797. Here at bar, the Government raises no such contentions. Nor is there any allegation that the Government will have wasted any expense or effort in reliance upon the court's judgment of September 29, 1998. Indeed, we are doubtful that any material injury of that sort could be proven, inasmuch as Stelco filed its Rule 60(b)(1) motion with relative alacrity, less than two months after judgment was entered.

The court feels constrained to emphasize that there is absolutely *no* prospect of unfair surprise to defendant, inasmuch as the document that forms the basis for Stelco's Rule 60(b)(1) motion—its timely-filed 1988 administrative refund claim—has indisputably been in the Government's possession *for over six years.*[28] To put this matter in its proper perspective, it must be remembered that the Government initiated this protracted controversy over Stelco's 1988 refund claim, by moving the court to dismiss the claim pursuant to RCFC 12(b)(1) for lack of subject matter jurisdiction. Then, and thereafter, the Government continuously held in its possession Stelco's timely filed 1988 administrative refund claim, *sub silentio,* while the court entered judgment dismissing the claim for that year with prejudice on the ground that Stelco had failed to produce said document. *Stelco,* 42 Fed.Cl. at 103–04, 118. Also, on the basis of documentation similarly contained in the Commissioner's files, but made available to the court, we held that Stelco *had* filed timely, efficacious refund claims for the taxable years 1984–1986, 1989–1991, and 1993–1995. In so doing, the court made the following pointed observation:

> We deem it especially noteworthy that throughout the pendency of this jurisdictional controversy, the Government has *never* overtly denied that it had *actual* notice of Stelco's claims. While it is undoubtedly the Government's prerogative to raise lack of notice on the part of the Commissioner as a jurisdictional defense in a tax refund suit, the Government may not neglect its corresponding duty to make reasonable inquiry in order to ascertain whether such a defense is well grounded in fact. RCFC 11. Where, as here, documentary evidence in the Government's possession conclusively establishes a jurisdictional fact in controversy, *i.e.,* notice to the Commissioner of a claim for refund, counsel for the United States would be well advised to consider filing a stipulation or otherwise conceding the point, rather than remaining silent and needlessly prolonging the jurisdictional controversy at the court's expense.

*Stelco,* 42 Fed.Cl. at 112 n. 23 (emphasis in original).

The same concerns apply with equal force, we think, to the Government's inaction with respect to Stelco's timely filed 1988 administrative refund claim. Given the Government's failure to produce this pivotal document—or at least to admit its existence—we think defendant is judicially estopped from claiming *any* prejudice as a consequence of such document now coming to light. Accordingly, on this record, we hold that defendant will suffer no material prejudice if the court grants relief pursuant to Rule 60(b)(1).

### 3. *Plaintiff's Culpability*

Turning to the final element of the three-factor test under Rule 60(b)(1), the court must now determine—whether Stelco's prior failure to produce its timely-filed 1988 administrative refund claim directly attributed to or was culpable in generating the adverse results. *Information Systems,* 994 F.2d at 795. For purposes of this culpability determination, Stelco is, of course, held accountable for the acts and omissions of its legal counsel. *Pioneer Inv. Servs. Co.,* 507 U.S. at 396–97, 113 S.Ct. 1489 (citing *Link v. Wabash R. Co.,* 370 U.S. 626, 633–34, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); *United States v. Boyle,* 469 U.S. 241, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985)). However, the pertinent case law furnishes no clear, consistent and obligatory standard of conduct that is deemed "culpable" under Rule 60(b)(1). As

---

**28.** As noted herein, the Government admits that the IRS received Stelco's 1988 administrative refund claim on September 11, 1992.

the Supreme Court has observed, in explaining the "excusable neglect" standard in the context of a party's failure to comply with a court-ordered filing deadline, there is a diverse, virtually endless, array of possible explanations for a party's failure to commit an act that is indispensable to its cause:

At one end of the spectrum, a party may be prevented from complying by forces beyond its control, such as by an act of God or unforeseeable human intervention. At the other, a party simply may choose to flout a deadline. In between lie cases where a party may *choose* to miss a deadline although for a very good reason, such as to render first aid to an accident victim discovered on the way to the courthouse, as well as cases where a party misses a deadline through inadvertence, miscalculation, or negligence.

*Pioneer,* 507 U.S. at 387–88, 113 S.Ct. 1489 (emphasis in original). It is for this reason that Rule 60(b)(1) requires a fact-intensive, case-specific "balancing approach, 'taking account of all relevant circumstances surrounding the party's omission.'" *Information Systems,* 994 F.2d at 796 (quoting *Pioneer,* 507 U.S. at 395, 113 S.Ct. 1489, 113 S.Ct. 1489). Thus, every Rule 60(b)(1) case is *sui generis,* and black-letter definitions of "culpable" conduct are unlikely to evolve.

■ Action, or inaction, which is *not* "culpable" conduct, on the other hand, is somewhat more certain. Two firmly settled principles emanate from the precedents. First, a litigant's default, due *solely* to intervening circumstances beyond its reasonable control, qualifies as "excusable neglect" under Rule 60(b)(1). *Pioneer,* 507 U.S. at 388, 394, 113 S.Ct. 1489. Here at bar, Stelco has not alleged, let alone proven, that any intervening circumstance beyond its reasonable control was the cause of its prior failure to produce its 1988 administrative claim for refund. To the contrary, it is eminently clear that such document has been in Ms. Di Battista's custody since 1995 (*i.e.,* when she assumed her duties as Manager–Tax of Stelco's Canadian parent corporation), well over one year before Stelco instituted this tax refund suit in March of 1997. Stelco has suggested no reason why Ms. Di Battista's custody of

such document was an intervening circumstance beyond Stelco's reasonable control, nor why Ms. Di Battista could not have located such document through the exercise of reasonable diligence. Thus, the principle that a litigant's default is "excusable" under Rule 60(b)(1), if attributable solely to intervening circumstances beyond its reasonable control, has no application to the present case.

The second general principle that governs Rule 60(b)(1) determinations is that negligence on the part of the movant, or its counsel, *may* constitute "excusable neglect." Stated differently, ordinary negligence is not a categorical bar to relief under Rule 60(b)(1). *See Pioneer,* 507 U.S. at 394, 113 S.Ct. 1489 ("[F]or purposes of Rule 60(b), 'excusable neglect' is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence."); *Information Systems,* 994 F.2d at 796 (quoting *Pioneer, supra,* and observing that "negligence can come within the definition of excusable neglect"); 12 *Moore's Federal Practice, supra,* § 60.24[1][a], at 60–84 ("The *Pioneer* decision made it clear that attorney negligence or carelessness *can* constitute excusable neglect." (emphasis in original)). Yet, the general principle that negligence is not culpable *per se* under Rule 60(b)(1) furnishes no guidance as to whether a specific act or omission is negligent, nor does it define whether a particular incidence of negligence is culpable or not. Accordingly, what is required is a careful inquiry into the degree of fault of Stelco's conduct, including whether there were any mitigating or aggravating circumstances. On this record, *infra,* we are convinced that Stelco's prior failure to timely produce its 1988 administrative claim for refund was the result not merely of its own negligence, but rather, its knowing and willful disregard of this court's rules and procedures.

Seeking to downplay the issue of culpability, Stelco discreetly avoids any direct admission that its prior default was attributable to neglect, excusable or otherwise, while selectively emphasizing the more hospitable rubric of "mistake" and "inadvertence" under Rule 60(b)(1). Pl. Brf. at 3. We find such

vague, conclusory assertions of mistake and inadvertence not only unpersuasive, but also, given the underlying circumstances of Stelco's default, wholly inapposite. On this record, Stelco's allegations of mistake or inadvertence are perforce subsumed within the "excusable neglect" determination pursuant to Rule 60(b)(1).

In filing this tax refund suit, Stelco averred, as it must under RCFC 8(a)(1), that this court has jurisdiction over the subject matter of the action. Compl. at 1, ¶ 2. Consistent therewith, and as duly noted in our opinion of September 29, 1998, Stelco had the undeniable "burden of establishing the indispensable jurisdictional facts by a preponderance of the evidence." *Stelco*, 42 Fed.Cl. at 106 (citing *Reynolds v. Army and Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988); *Cedars–Sinai Medical Center v. Watkins*, 11 F.3d 1573, 1583 (Fed.Cir.1993), *cert. denied*, 512 U.S. 1235, 114 S.Ct. 2738, 129 L.Ed.2d 859 (1994); *Morris v. United States*, 33 Fed. Cl. 733, 742 (1995)). That the taxpayer's timely filing of a proper administrative claim for refund is one of the indispensable jurisdictional facts, in a tax refund suit, is long settled. *United States v. Felt & Tarrant Mfg. Co.*, 283 U.S. 269, 272, 51 S.Ct. 376, 75 L.Ed. 1025 (1931). Stelco's jurisdictional averment and the associated burden of proof necessarily extend to each and every claim for refund pleaded in its petition, including the 1988 refund claim presently in issue.

Counsel for plaintiff was surely aware of all of the foregoing when he signed Stelco's petition and filed same with this court. Moreover, in signing said petition, counsel, no doubt, also had in mind his threshold obligations pursuant to RCFC 11, which provides, in pertinent part, as follows:

> The signature of an attorney or party constitutes a certificate by the attorney or party that the attorney or party *has read* the pleading ... [and] that to the best of the attorney's or party's knowledge, information, and belief *formed after reasonable inquiry* it is *well grounded in fact....*

RCFC 11 (emphasis added). We think it self-evident that RCFC 11 imposes an irrefutable *duty of inquiry*. Such inquiry, however, need only be "reasonable," not infinite

in scope, inasmuch as pleadings frequently address disputed factual matters that can only be resolved by a trial on the merits.

Jurisdiction, however, stands on a different footing, at least in a tax refund suit where the factual inquiry relates to something so elementary as the existence of a timely filed administrative claim for refund. In such a case, the initial duty of inquiry is especially vital, and the consequences of a breach thereof exceptionally grave, because the condition precedent to all litigation is subject matter jurisdiction, without which "the court cannot proceed at all in any cause." *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1868), *quoted with approval in Steel Company v. Citizens For A Better Environment*, 523 U.S. 83, 118 S.Ct. 1003, 1012, 140 L.Ed.2d 210 (1998). Were this not the case, it might be arguable whether Stelco's failure to produce its 1988 administrative refund claim was attributable merely to mistake or inadvertence. Here at bar, however, counsel for plaintiff had an unmistakable legal and ethical *duty*, prior to filing, to make reasonable inquiry in order to ascertain whether the jurisdictional averment in Stelco's petition was well grounded in fact. Assertions of "mistake" and "inadvertence" cannot be countenanced where the complainant bears a *known* duty to make reasonable inquiry into the matter in question. The decisive issue against this background, therefore, is whether Stelco, by and through its counsel, *breached* its duty to make reasonable inquiry respecting the existence of indispensable jurisdictional facts in its 1988 claim for refund.

It is patently clear, on this record, that Stelco knowingly committed a breach of its duty of reasonable inquiry. The record shows that counsel for plaintiff filed the petition in this action without having first ascertained whether Stelco had, in fact, filed a timely administrative refund claim for its taxable year 1988. Despite counsel's then-ignorance regarding the existence of this crucial jurisdictional fact, said petition, nonetheless, categorically alleges that this court has jurisdiction over Stelco's 1988 claim for refund. It is evident that the jurisdictional averment in Stelco's petition as to the taxable year 1988 was not *then known* to be well

grounded in fact, as required. On the contrary, the allegation that this court has jurisdiction over Stelco's 1988 refund claim, founded as it was upon the inadequate knowledge then available to counsel for plaintiff, was nothing more than the product of unadulterated speculation. The stark truth of the foregoing conclusion is further demonstrated by Stelco's response to the jurisdictional challenge raised by the Government's RCFC 12(b)(1) motion. Rather than meet that attack squarely, with the submission of its timely-filed 1988 administrative claim for refund, Stelco blandly (albeit erroneously) admitted that 1988 is a closed year, but meanwhile urged the court to defer ruling on this apparently fatal jurisdictional defect and proceed to the merits. Bound by obligatory precedent, and settled principles of sound jurisprudence, the court declined to embrace such a novel approach, and dismissed Stelco's 1988 refund claim, with prejudice. *Stelco*, 42 Fed.Cl. at 104–05.

In its Rule 60(b)(1) motion, Stelco proffers no credible justification for its prior failure to locate and produce its timely 1988 administrative claim for refund. Particularly noteworthy is Stelco's failure to allege that its representatives, including its counsel of record here at bar and Ms. Di Battista, conducted a reasonably diligent search for the document, either before this lawsuit was instituted or, after this jurisdictional controversy arose, prior to the court's entry of judgment on September 29, 1998, dismissing Stelco's 1988 refund claim with prejudice. To be sure, we accept as true Ms. Di Battista's statement that she was not personally involved in the filing of Stelco's 1988 administrative refund claim with the IRS in September of 1992, inasmuch as she did not assume her duties as Manager–Tax of Stelco, Inc. (plaintiff's Canadian parent corporation) until sometime in 1995. Likewise, the court has no reason to doubt Ms. Di Battista's declaration that she was misled into believing that Stelco's 1988 taxable year was closed for purposes of this litigation, because the documentation in her tax return files suggested that her predecessor had omitted such year from the ongoing extensions of the statute of limitations on refund claims (Forms 872) that Stelco and the IRS had entered into with respect to numerous other tax years. Perhaps, it might be more accurate to say that Ms. Di Battista "misunderstood" what was or was not before her.

We discount, also, as utterly unconvincing, Ms. Di Battista's conclusory assertion that "[b]ased upon my current records, *I had no way of knowing* of the existence of the claim for 1988 which I discovered on October 30, 1998." Di Battista Affidavit at 2, ¶ 8 (emphasis added). Nothing in her affidavit implies why this was so. Ms. Di Battista does not represent that her erroneous belief was formed on the basis of a comprehensive search of her files. Nor is there any indication that Ms. Di Battista (or any other representative of Stelco) attempted to contact her predecessor in order to ascertain whether 1988 was truly a closed year or, as ultimately proved to be the case, the subject of a timely filed administrative refund claim. It appears, rather, that Ms. Di Battista simply inferred and/or concluded, from the omission of the taxable year 1988 from Stelco's ongoing extensions of the statute of limitations, that such year was closed. Consequently, the only reason Ms. Di Battista "had no way of knowing" of the existence of Stelco's timely filed 1988 administrative refund claim is that she drew a premature, faulty inference as to its nonexistence, rather than attempting a reasonably diligent search or inquiry for such document.

In short, Ms. Di Battista's affidavit fails to suggest why a reasonably diligent search was impracticable or unlikely to uncover the subject document. Although Ms. Di Battista did not assume responsibility for Stelco's tax return filings until 1995, there is no contention that she inherited files relating to prior years' tax returns—including, specifically, the 1988 administrative claim for refund—that were in such a state of disorganization as to confound a reasonably diligent search for such document. Indeed, Ms. Di Battista admits that upon finally "attempting to reconstruct [Stelco's] prior year [tax] records to determine the consequences of the decision of the court on September 29, 1998, [she] discovered the timely filed claim for refund" on October 30, 1998. Di Battista Affidavit at 2, ¶ 6.

Ms. Di Battista's belated admission carries significant implications. The court first noted its concerns over subject matter jurisdiction in an order filed on May 20, 1998. *Stelco,* 42 Fed.Cl. at 158 (pertinent excerpt from order). Shortly thereafter, on June 3, 1998, the Government filed RCFC 12(b)(1) motions to dismiss 12 of the 15 years for which Stelco had pleaded refund claims, including 1988, for lack of subject matter jurisdiction. *Stelco,* 42 Fed.Cl. at 103. Stelco unquestionably recognized the grave dilemma posed by the aforementioned matters, judging from its numerous responsive filings intended to bolster the jurisdictional footing of its claims. However, Stelco failed to produce its timely filed 1988 administrative refund claim. Surely the circumstances called for nothing less than an all-out effort to locate such document, given the severe consequences of a failure to do so, *i.e.,* dismissal with prejudice for lack of subject matter jurisdiction. Yet, from Ms. Di Battista's affidavit, *supra,* we may reasonably infer that Stelco's representatives failed to commence a reasonably diligent search for Stelco's 1988 administrative refund claim until *after* the court had dismissed Stelco's 1988 refund claim with prejudice. Thus, it cannot be said that Stelco's Rule 60(b)(1) motion presents the sympathetic case in which the taxpayer demonstrates that it diligently combed its files for months, under the threat of dismissal with prejudice, while the sought-after jurisdictional evidence refused to come to light. Rule 8(a)(1). Quite the contrary, on this record, we are constrained to conclude not only that Stelco knowingly breached its legal and ethical duty to make reasonable inquiry as to an indispensable jurisdictional element of its 1988 refund claim, but also that Stelco allowed such breach to persist for months despite having every opportunity to correct it.

Turning next to Stelco's contention that its prior failure to timely produce its 1988 administrative refund claim was attributable to Ms. Di Battista's ignorance of United States tax law and the procedural rules which govern this court's jurisdiction, we find this factor to be of no consequence whatsoever. While it no doubt may be true that Ms. Di Battista, a Canadian citizen, lacks a high degree of familiarity with such matters, counsel for plaintiff has *no* such excuse. Moreover, in evaluating the culpability of Stelco's conduct under the "excusable neglect" standard of Rule 60(b)(1), Stelco is and must be held accountable for the acts and omissions of its legal counsel. *Pioneer,* 507 U.S. at 396–97, 113 S.Ct. 1489. Stelco's 1988 refund claim was dismissed with prejudice not because of some unfamiliar local procedural rule peculiar to this court, but rather due to the jurisdictional requirement of a timely-filed administrative refund claim, which, in the context of federal income tax refund litigation, is critical. *Felt & Tarrant Mfg. Co.,* 283 U.S. at 272, 51 S.Ct. 376. The consequences that flow from counsel for plaintiff's inattention to that venerable rule are undiminished by Ms. Di Battista's professed ignorance of the procedural rules of tax refund litigation.

Moreover, it is not alleged that counsel for plaintiff independently undertook any early investigation into the existence of a timely filed 1988 administrative refund claim. Rather, from Stelco's submission of Ms. Di Battista's affidavit, we may reasonably infer that counsel instead totally relied upon Ms. Di Battista's so-called investigation and, needless to say, her erroneous belief that 1988 was a closed year. It appears, therefore, as Stelco concedes in its Rule 60(b)(1) motion, that counsel for plaintiff merely *"assumed* that 1988 had been allowed to close for some reason." Pl. Br. at 2 (emphasis added). Counsel's imprudent reliance upon Ms. Di Battista's inadequate knowledge presents, therefore, at least two additional problems. First, we find it difficult to comprehend why counsel should rely upon a person known to be technically unfamiliar with U.S. tax laws to conduct an investigation into matters weighing heavily upon the critical issue of subject matter jurisdiction. Careful inquiry could have easily overcome Ms. Di Battista's lack of expertise, presumably, but the record does not suggest that counsel for plaintiff took any action to supervise her investigation.

Second, this court is, of course, bound by the Supreme Court's dictate that the "proper focus" of the excusable neglect analysis is upon the *joint* misconduct of the defaulting

party *and its counsel. Pioneer*, 507 U.S. at 397, 113 S.Ct. 1489. That being so, we must reject Stelco's attempt to segregate counsel for plaintiff's conduct from Ms. Di Battista's conduct, in an effort to fabricate a showing of excusable neglect from their apparent miscommunication or lack of communication. Stelco, therefore, cannot escape the consequences of its counsel's knowing disregard of his legal and ethical duty to make a reasonably diligent inquiry into the indispensable jurisdictional facts associated with Stelco's 1988 refund claim. Rules 8 and 11. This is so because in "our system of representative litigation ... each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'" *Link v. Wabash R. Co.*, 370 U.S. 626, 633–34, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962) (quoting *Smith v. Ayer*, 101 U.S. 320, 326, 25 L.Ed. 955 (1880)), *quoted with approval in Pioneer*, 507 U.S. at 397, 113 S.Ct. 1489.

Our emphasis upon Stelco's knowing breach of its duty to conduct a reasonably diligent investigation into the existence of a timely-filed 1988 administrative claim for refund is consistent with the analysis commonly utilized in cases involving failures to produce indispensable documentary evidence. Notably, in *Kahle v. Amtorg Trading Corp.*, 13 F.R.D. 107 (D.N.J.1952), the plaintiffs failed to deliver certain documents, in their possession, to their attorney and, due to such documents' unavailability, the court entered summary judgment for the defendant. *Id.* Thereafter, the plaintiffs filed a Rule 60(b)(1) motion, submitting in support thereof an affidavit executed by one of the plaintiffs. *Id.* at 108. The similarity between Ms. Di Battista's affidavit, here at bar, and the affidavit filed in *Kahle* is striking. Like Ms. Di Battista, the *Kahle* affiant stated that since the entry of judgment, he had searched his files and had "found" the documents in issue. *Id.* As with Ms. Di Battista's affidavit, however, the *Kahle* affiant failed to aver that the documents in question had previously been unavailable to the plaintiffs, or could not have been "found" by the exercise of due dili-

gence. *Id.* In addition, as with Ms. Di Battista, the *Kahle* affiant admitted to an error of judgment. Whereas Ms. Di Battista cut short her initial investigation on the basis of her faulty assumption that her files contained no timely-filed 1988 administrative claim for refund, the *Kahle* affiant had erroneously assumed, when that lawsuit was commenced, that the "found" documents were "of no importance or relevance." *Id.*

Because the *Kahle* plaintiffs' Rule 60(b)(1) motion was predicated upon what purported to be newly found evidence, the district court reasoned that such motion was tantamount to a motion under Rule 60(b)(2), which provides that the court may grant relief from a judgment upon the movant's proffer of "newly discovered evidence *which by due diligence could not have been discovered.*" RCFC 60(b)(2) (emphasis added).[29] Lacking any allegation, or proof, that the plaintiffs could not have discovered such documents by the exercise of due diligence, the district court refused to grant relief from its judgment. In so holding, the district court stated:

> The plaintiffs would not be entitled to prevail if the present motion were predicated on the ground defined in subdivision (b)(2) of the Rule.... The conditions prescribed by this subdivision are not present in the instant case. May the plaintiffs, unable to meet the requirements of subdivision (b)(2), avoid them by an expedient resort to the grounds enumerated in subdivision (b)(1)? It is our opinion that the answer must be in the negative, especially where, as here, the mistake was a mistake of judgment ascribable solely to the plaintiffs.

*Kahle*, 13 F.R.D. at 109 (citations omitted). *See also Torockio v. Chamberlain Mfg. Co.*, 56 F.R.D. 82, 86 n. 8, 87 (W.D.Pa.1972) (following *Kahle* and holding that plaintiffs' failure to provide a document to their attorney upon which subject matter jurisdiction hinged was neither excusable neglect under Rule 60(b)(1), nor a case of newly discovered evidence justifying relief under Rule 60(b)(2)). More recently, in *Richardson v.*

---

**29.** The text of Federal Rule of Civil Procedure 60(b)(2), on which the holding in *Kahle* rested, is identical to the text of RCFC 60(b)(2).

*National Rifle Ass'n,* 879 F.Supp. 1 (D.D.C. 1995), the district court held that the plaintiff was charged with knowledge of certain critical documents that were in his possession, but not made available to his attorney, when the court considered and granted the defendant's summary judgment motion. *Id.* at 2. There, the plaintiff's prior failure to provide such documents to his attorney was deemed not to be excusable neglect under Rule 60(b)(1), and such documents could not creditably be "newly discovered evidence" within the meaning of Rule 60(b)(2). *Id.*

■ We find the rationale of *Kahle* and the other cited cases, *supra,* to be persuasive. Such cases demonstrate that where a Rule 60(b)(1) motion is predicated upon the production of formerly "missing" documents that were, in fact, within the movant's possession prior to the entry of the judgment sought to be relieved, the touchstone for relief under an excusable neglect determination must be whether the movant satisfied its duty to make a reasonably diligent inquiry as to the existence of such documents. Where, as here, it is neither alleged, nor proven, that the movant undertook a timely, reasonably diligent search for the documents in question, or that such a search was impracticable, or would be an exercise in futility, the movant's conduct is culpable, *i.e.,* not excusable.[30]

■ Here at bar, it is undeniable that Stelco had a legal and ethical duty to make a reasonably diligent and timely inquiry in order to make certain that the jurisdictional allegations in its petition were well grounded in fact. *See, e.g.,* RCFC 11. Under Federal Circuit precedent, however, the movant's conduct must further exhibit a "willful disregard for the court's rules and procedures" in order to be held culpable under Rule 60(b)(1). *Information Systems,* 994 F.2d at 796. It is irrefutable, that, on this record, Stelco committed *a knowing and willful* breach of that duty, in disregard of this court's rules and procedures. The Supreme Court, in discussing violations of tax statutes, has stated that in order to prove that such

violations were "willful," the government must show that "the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty." *Cheek v. United States,* 498 U.S. 192, 201, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991). Thus, for Stelco to have willfully violated its duty to make reasonable inquiry into the jurisdictional allegations in its petition, there must be a duty imposed by law to make the reasonable inquiry, Stelco must know of this duty, and Stelco must have voluntarily and intentionally violated it. These prerequisites for a finding of willfulness have been clearly met on this record, for reasons already discussed herein.

First, there is a duty, imposed by law, to make reasonable inquiry into jurisdictional facts asserted in a petition. Caselaw clearly puts the burden on plaintiffs to establish the facts that give the court subject matter jurisdiction over its complaint. *Reynolds,* 846 F.2d at 748. It is also well established in law that a jurisdictional prerequisite to a tax refund suit is a prior administrative claim for refund. *Felt & Tarrant Mfg.,* 283 U.S. at 272, 51 S.Ct. 376. Additionally, Rule 11 places on Stelco's attorney the duty to make reasonable inquiry into the facts stated in the pleadings. RCFC 11. Thus, there is no dispute that a clear duty was placed on Stelco to make a reasonable inquiry into its factual averments establishing subject matter jurisdiction for its claim relative to taxable year 1988. An assertion that subject matter jurisdiction existed in this court pointedly implied that Stelco had already filed an administrative refund claim for taxable year 1988.

Second, Stelco knew of its duty to make reasonable inquiry through its legal counsel who filed its petition. A party in litigation is deemed to have "notice of all facts ... which can be charged upon the attorney." *Link v. Wabash,* 370 U.S. at 633–34, 82 S.Ct. 1386 (quoting *Smith v. Ayer,* 101 U.S. at 326, 25 L.Ed. 955). A lawyer, of course, does not

---

**30.** The court has little doubt that Stelco's putative Rule 60(b)(1) motion is, in reality, a thinly disguised and meritless plea for relief under Rule 60(b)(2), since said motion hinges *entirely* upon Stelco's belated production of its timely filed 1988 administrative claim for refund. Even so, and notwithstanding our agreement with *Kahle* and the other cited authorities, we pause to note that our holding here is premised upon Rule 60(b)(1), *not* Rule 60(b)(2).

have the excuse of ignorance of the law. Thus the knowledge of Stelco's counsel that a reasonable inquiry must be made into whether Stelco had filed an administrative refund claim for taxable year 1988 is imputed to Stelco.

Finally, we are led inexorably to the conclusion that Stelco voluntarily and knowingly violated its duty to determine whether it had filed the administrative refund claim for 1988. As discussed earlier, Stelco has not averred that it made any search for the 1988 administrative refund claim before filing its petition or anytime thereafter but before this court entered judgment on September 29, 1998. Instead, it appears that Stelco's counsel relied solely on Ms. Di Battista's belief that 1988 was a closed year. Indeed, Stelco concedes in its Rule 60(b)(1) motion that it had merely "assumed" that 1988 "had been allowed to close for some reason." Pl. Br. at 2. An assumption is not, in any sense, a reasonable inquiry. Thus, when Stelco knowingly and erroneously averred that this court had subject matter jurisdiction over its 1988 refund claim, such averment was based on a naked assumption blindly made, rather than following a reasonable inquiry. To assert a fact in a pleading that is based on a blind assumption when it should be based on "belief after reasonable inquiry [that] it is well grounded in fact," *see* RCFC 11, can only be rank speculation. Moreover, even after the Government mounted its jurisdictional attack upon Stelco's 1988 refund claim, Stelco continued to fail to take action to cure its ongoing breach of the duty of reasonable inquiry until *after* this court dismissed its 1988 refund claim, with prejudice. Consequently, taking into account Stelco's knowledge of its duties and its knowing yet *persistent* disregard for this court's rules and procedures, we hold that Stelco's prior failure to produce its 1988 administrative claim for refund was attributable to its own culpable conduct and not excusable neglect.

Even assuming, *arguendo*, that Stelco's prior failure to timely produce its 1988 administrative claim for refund was the result merely of its knowing and reckless misconduct, as opposed to willful misconduct, that circumstance, nevertheless, would not alter our conclusion that Stelco's conduct was culpable. This is so because, unlike the situation presented in *Information Systems,* in which the Federal Circuit enunciated the "willfulness" requirement, the case at bar arises from fact circumstances that strongly militate in favor of a finding of culpability. *Information Systems* was a government contract case in which the trial court entered a *default judgment,* pursuant to RCFC 55(a), against a dilatory plaintiff who mistakenly assumed that it was not required to answer the Government's counterclaim. *Id.* at 794. Default judgments, as with *ex parte* proceedings generally, are customarily subject to close judicial scrutiny, on the ground that due process of law requires, at a minimum, notice and an opportunity to be heard. *See, e.g., Mullane v. Central Hanover Tr. Co.,* 339 U.S. 306, 313–14, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Thus, pursuant to its careful survey of Rule 60(b)(1) precedents decided by the other federal courts of appeal, the Federal Circuit observed that "Rule 60(b) 'is applied most liberally to judgments in default.'" *Information Systems,* 994 F.2d at 795 (quoting *Seven Elves, Inc. v. Eskenazi,* 635 F.2d 396, 403 (5th Cir.1981)). The Federal Circuit noted, further, that the case before it was "not an 'extreme' one deserving of the 'drastic step' of default judgment." *Id.* at 796 (quoting *United Coin Meter Co. v. Seaboard Coastline R.R.,* 705 F.2d 839, 845 (6th Cir. 1983)). Explaining the foregoing, the Federal Circuit emphasized that it is the punitive aspect of a default judgment which makes a finding of willful misconduct necessary before relief from such judgment pursuant to Rule 60(b)(1) can be denied. *Id.* at 797. Given the Federal Circuit's narrow focus upon *default* judgments, we are deeply skeptical that *Information Systems* can be construed to imply that the conduct of a movant under Rule 60(b)(1) is *never* culpable, under *any* circumstances, unless it rises to the level of a willful disregard for this court's rules and procedures.

Here at bar, there was no default judgment *on the merits,* nor was Stelco denied a full and fair opportunity to litigate the matter in controversy. On the contrary, here the matter in controversy was the threshold

issue of subject matter jurisdiction, as to which Stelco had the burden of establishing the indispensable jurisdictional facts by a preponderance of the evidence. *Reynolds,* 846 F.2d at 748. Although we found that Stelco failed to carry that burden and, consequently, dismissed Stelco's 1988 refund claim with prejudice, it can hardly be said that the court denied Stelco an opportunity to be heard. Rather, as our opinion of September 29, 1998, dutifully noted, and "mindful that 'the party asserting jurisdiction must be given an opportunity to be heard before dismissal is ordered,' *Reynolds,* 846 F.2d at 748, the court ... allowed Stelco no fewer than *four* opportunities to show that its administrative refund claims for the years at issue satisfy all of the jurisdictional prerequisites to the maintenance of a tax refund suit." *Stelco,* 42 Fed.Cl. at 107–08 n. 14 (emphasis in original). As presently postured, therefore, this case is easily distinguishable from the scenario in which Rule 60(b)(1) is most frequently invoked, *i.e.,* a case in which the movant failed to defend due to alleged mistake, inadvertence, surprise, or excusable neglect. *See Kahle,* 13 F.R.D. at 109 (drawing a similar distinction). This court, generously, allowed Stelco over four months in which to satisfy a *known* duty to search for and produce its timely filed 1988 administrative claim for refund, under the obvious threat of dismissal with prejudice for lack of subject matter jurisdiction, yet it inexplicably failed to do so. Thus, even assuming that Stelco's prior failure to produce such document could be, charitably, viewed as something less than willful misconduct, its conduct would nonetheless manifest a knowing and reckless disregard of this court's rules and procedures that would, on this record, properly be deemed culpable for purposes of Rule 60(b)(1).

Therefore, a finding that Stelco's prior failure to produce its 1988 administrative refund claim was not culpable conduct would be tantamount to an open invitation to taxpayers to flout the prerequisites to invoking this court's jurisdiction, and to thereby burden the court with a plethora of jurisdictional issues to untangle. We are constrained, as a consequence, to hold that Stelco's knowing, willful, and persistent disregard of this court's rules and procedures, relative to its prior nonproduction of its 1988 administrative claim for refund, constitutes culpable conduct for purposes of Rule 60(b)(1).

### 4. Balancing The Equities

■ Having laboriously analyzed each of the three factors on which relief under Rule 60(b)(1) depends, the court must now balance the equities relative to such factors, in order to determine whether such relief is appropriate here at bar. *Information Systems,* 994 F.2d at 796. We begin by briefly summarizing our holdings herein, *supra,* as to each factor. First, Stelco's 1988 refund claim is sufficiently meritorious to make further proceedings, should the court grant relief pursuant to Rule 60(b)(1), more than a mere exercise in futility. Second, the Government will suffer no material prejudice if relief is granted. Third, the dismissal with prejudice of Stelco's 1988 refund claim was the consequence of Stelco's knowing, willful, and persistent disregard of this court's rules and procedures pertinent to subject matter jurisdiction.

Proceeding at the most elementary level of analysis, the first two of the three factors above point toward granting relief. We are of the opinion, however, that the balancing analysis under Rule 60(b)(1), to be meaningful, must amount to something more than a mathematical assessment of where the majority of the three determinative factors lies. Instead, the court must carefully weigh all of the pertinent facts and circumstances and use its informed discretion to determine whether Stelco is truly deserving of relief from the dismissal of its 1988 refund claim with prejudice. *Information Systems,* 994 F.2d at 796.

The first element of the three-factor test under Rule 60(b)(1)—whether the movant asserts a sufficiently meritorious claim—is a threshold inquiry rather than a factor entitled to substantial consideration in the court's determination of the equities. As the First Circuit stated, the requirement of a meritorious claim "guards the gateway to Rule 60(b) relief." *Local 59,* 953 F.2d at 20. *See also* 12 *Moore's Federal Practice, supra,*

**724**

§ 60.24[1] (collecting cases to this effect). Plainly, if the movant under Rule 60(b)(1) has a patently meritless claim, granting relief from the judgment is "a futile gesture." *Boyd v. Bulala*, 905 F.2d 764, 769 (4th Cir. 1990). If, on the other hand, the court determines that the movant has a claim that is sufficiently meritorious for purposes of Rule 60(b)(1), that means only that such claim states a legally tenable cause of action. *Local 59*, 953 F.2d at 21; 12 *Moore's Federal Practice, supra*, § 60.24[2]. Inasmuch as our prejudgment, on this record, of the ultimate merits of Stelco's 1988 refund claim would of necessity be purely speculative, it would be a hazardous exercise to attempt to assign any specific weight to such claim for purposes of the balancing analysis under Rule 60(b)(1). Accordingly, to ensure that neither party is improperly disadvantaged, the court shall conservatively view the "meritoriousness" of Stelco's claim as a neutral factor.

Given the foregoing, in order to determine whether Stelco is entitled to relief under Rule 60(b)(1), the court must now balance two factors—the lack of any threat of material prejudice to the Government, if relief were granted, and Stelco's culpable conduct. Although the record clearly establishes Stelco's culpability beyond reasonable dispute, our task is complicated by the defendant's conduct, which is hardly beyond reproach. Both parties had the pivotal jurisdictional document at all relevant times, *i.e.*, Stelco's timely-filed 1988 administrative claim for refund, in their possession prior to the court's entry of judgment dismissing Stelco's 1988 refund claim. Nonetheless, both parties failed to timely produce such document for the court's inspection. Just as Stelco knowingly and willfully breached its duty to make certain of its jurisdictional allegations in its petition, the Government raised a jurisdictional defense against such claim without satisfying its clear duty to also make certain that such defense was well grounded in fact, *i.e.*, that no claim for refund had in fact been timely filed. As a result of both parties' gross inattention to their respective duties of inquiry, the court has been put to the burden of examining the jurisdictional merits of Stelco's 1988 refund claim not once, but twice—the first time in our September 29, 1998

opinion, and the second time in this opinion when we were required to determine whether Stelco has asserted a meritorious claim for refund of its 1988 taxes. In short, both parties' conduct has been thoroughly short of exemplary.

On this record, however, we cannot say that the impropriety of the Government's handling of this jurisdictional controversy, coupled with the lack of prejudice to the Government if relief were granted, outweighs Stelco's culpable conduct. It was not, after all, defendant's initial burden, relative to Stelco's 1988 refund claim, to *disprove* subject matter jurisdiction. To the contrary, plaintiff had the burden, *ab initio*, to prove each and every indispensable jurisdictional fact by a preponderance of the evidence. *Reynolds*, 846 F.2d at 748. Stelco failed to meet this burden, despite the fact that over a period of several months, it was given every opportunity to do so. Therefore, we hold that Stelco has failed to establish its entitlement to relief under Rule 60(b)(1), and the court's judgment entered on September 29, 1998, dismissing Stelco's 1988 refund claim with prejudice, for lack of subject matter jurisdiction, shall stand.

**CONCLUSION**

Given all of the foregoing, we further hold that Stelco has failed to demonstrate that its prior failure to produce its timely filed 1988 administrative claim for refund was attributable to "mistake, inadvertence, ... or excusable neglect," within the meaning of RCFC 60(b)(1). Accordingly, plaintiffs' motion, filed November 23, 1998, requesting partial relief from the court's judgment entered on September 29, 1998, pursuant to RCFC 60(b)(1), insofar as said judgment relates to the dismissal with prejudice of plaintiff's refund claim for the taxable year 1988 for lack of subject matter jurisdiction, is hereby DENIED.

IT IS SO ORDERED.